UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Fatuma A.,[1]

                Plaintiff,                Court File No. 19-cv-3160 (WMW/LIB)

      v.                         **REPORT AND RECOMMENDATION**

Andrew Saul,
Commissioner of Social Security,

                Defendant.

Plaintiff, Fatuma A. (hereinafter "Plaintiff"), seeks judicial review of the decision of the Commissioner of Social Security ("Defendant") denying her application for disability benefits. This matter has been referred to the undersigned United States Magistrate Judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. This Court has jurisdiction over the claims pursuant to 42 U.S.C. § 405(g). Both parties submitted cross-motions for summary judgment, [Docket Nos. 15, 18], and the Court took the matter under advisement on the written submissions.

For the reasons discussed below, the Court recommends that Plaintiff's Motion for Summary Judgment, [Docket No. 15], be **DENIED**, and that Defendant's Motion for Summary Judgment, [Docket No. 18], be **GRANTED**.

---

[1] This District has adopted the policy of using only the first name and last initial of any nongovernmental parties in Social Security opinions such as the present Order. Accordingly, where the Court refers to Plaintiff by his name only her first name and last initial are provided.

## I. Procedural History

On June 15, 2017, Plaintiff filed a Title II application for supplemental security income. (Tr. 24).[2] Plaintiff alleged that her disability began on May 1, 2009. (Tr. 24). The Commissioner initially denied Plaintiff's present claims on September 19, 2017, and again, upon reconsideration, on November 28, 2017. (Tr. 24). On December 15, 2017, Plaintiff filed a written request for a hearing before an Administrative Law Judge. (Tr. 24, 114).

Administrative Law Judge Micah Pharris (the "ALJ") conducted a hearing on April 23, 2019. (Tr. 27, 44). Plaintiff appeared at the administrative hearing with her non-attorney representative, Kelly Blad. (Tr. 27, 44). Plaintiff and an impartial vocational expert ("IVE"), Mitchell J. Norman ("IVE Norman"), testified at the hearing. (Tr. 27). On May 10, 2019, the ALJ issued a decision denying Plaintiff's request for supplemental security income. (Tr. 24–35). The ALJ concluded that Plaintiff was not disabled within meaning of the Social Security Act. (Tr. 24, 35).

Plaintiff thereafter sought review of the decision by the Appeals Council. (Tr. 2, 257). With her request for review, Plaintiff submitted a new medical source statement from Georgi Kroupin, Ph.D., LMFT, dated June 13, 2019 which was not part of the record before the ALJ. (Tr. 3, 15, see also, 17–20). Subsequently, on October 28, 2019, the Appeals Council found that the statement from Dr. Kroupin did "not show a reasonable probability that it would change the outcome of the decision," and the Appeals Council "did not exhibit th[at] evidence." (Tr. 3). The Appeals Council denied Plaintiff's request for review. (Tr. 2–7). Accordingly, the ALJ's decision became the final decision of the Commissioner. See, 20 C.F.R. §§ 404.981, 416.1481.

---

[2] Throughout this Order, the Court refers to the Administrative Record, [Docket No. 14], by the abbreviation "Tr." The Administrative Record is consecutively paginated across 48 exhibits. (See, Administrative Record [Docket No. 14]). Where the Court cites to the Administrative Record, it refers to the page numbers found in the bottom-right corner of these exhibits.

On December 23, 2019, Plaintiff filed the present action. (Compl. [Docket No. 1]).

## II. Standards of Review

If a claimant's initial application for disability benefits is denied, she may request reconsideration of the decision. 20 C.F.R. §§ 404.907–404.909. A claimant who is dissatisfied with the reconsidered decision may then obtain administrative review by an administrative law judge. 42 U.S.C. § 405(b)(1); 20 C.F.R. § 404.929.

To determine the existence and extent of a claimant's disability, the ALJ must follow a five-step sequential analysis. This analysis requires the ALJ to make a series of factual findings regarding the claimant's impairments, residual functional capacity, age, education, and work experience. See, 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); see also, Locher v. Sullivan, 968 F.2d 725, 727 (8th Cir. 1992). The Eighth Circuit has described this five-step process as follows:

> The Commissioner of Social Security must evaluate: (1) whether the claimant is presently engaged in a substantial gainful activity; (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities; (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations; (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

Dixon v. Barnhart, 353 F.3d 602, 605 (8th Cir. 2003).

If the claimant is dissatisfied with the ALJ's decision, she may request review by the Appeals Council, although the Appeals Council need not grant that request for review. See, 20 C.F.R. §§ 404.967–404.982. The decision of the Appeals Council (or, if the request for review is denied by the Appeals Council, then the decision of the ALJ) is final and binding upon the claimant, unless the matter is appealed to federal district court within sixty days after notice of the Appeals Council's action. See, 42 U.S.C. § 405(g); 20 C.F.R. § 404.981.

In the present case, the Appeals Council declined to review the ALJ's decision finding that Plaintiff was not disabled, (Tr. 2–7), thus making the ALJ's decision effectively the final decision of the Commissioner.

Judicial review of the administrative decision generally proceeds by considering the decision of the ALJ at each of the five steps. Judicial review of the decision to deny disability benefits, however, is constrained to a determination of whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008); Tellez v. Barnhart, 403 F.3d 953, 956 (8th Cir. 2005); Buckner v. Apfel, 213 F.3d 1006, 1012 (8th Cir. 2000) ("We may reverse and remand findings of the Commissioner [through the ALJ] only when such findings are not supported by substantial evidence on the record as a whole."). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." Buckner, 213 F.3d at 1012 (quoting Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000)); Coleman v. Astrue, 498 F.3d 767, 770 (8th Cir. 2007).

In reviewing the record for substantial evidence, the Court may not substitute its own judgment or findings of fact for that of the ALJ. Hilkemeyer v. Barnhart, 380 F.3d 441, 445 (8th Cir. 2004). The possibility that the Court could draw two inconsistent conclusions from the same record does not prevent a particular finding from being supported by substantial evidence. Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994). The Court should not reverse the Commissioner's finding merely because evidence may exist in the administrative record to support the opposite conclusion. Milam v. Colvin, 794 F.3d 978, 983 (8th Cir. 2015); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993).

4

After balancing the evidence, if it is possible to reach two inconsistent positions from the evidence and one of those positions represents the Commissioner's decision [through the ALJ], the court must affirm the decision. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Thus, the court will not reverse the ALJ's "denial of benefits so long as the ALJ's decision falls within the 'available zone of choice.'" Bradley v. Astrue, 528 F.3d 1113, 1115 (8th Cir. 2008). The decision of the ALJ "is not outside the 'zone of choice' simply because [the Court] might have reached a different conclusion had [it] been the initial finder of fact." Id. "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." Medhaug v. Astrue, 578 F.3d 805, 813 (8th Cir. 2009) (quotation omitted).

The claimant bears the burden under the Social Security Act of proving that she is disabled. See, 20 C.F.R. § 404.1512(a); Whitman v. Colvin, 762 F.3d 701, 705 (8th Cir. 2014). Once the claimant has demonstrated she cannot perform prior work due to a disability, the burden then shifts to the Commissioner to show that the claimant retains the residual functional capacity ("RFC") to engage in some other substantial, gainful activity. Goff v. Barnhart, 421 F.3d 785, 790 (8th Cir. 2005).

## III. Decision Under Review

The ALJ made the following determinations during the five-step disability evaluation process.

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since June 15, 3017, the application date. (Tr. 26). This finding is not in dispute.

At step two, the ALJ concluded that Plaintiff had "the following severe impairments: lumbar degenerative disc disease; endometriosis and abdominal adhesions; right knee degenerative

joint disease; major depressive disorder/adjustment disorder; and anxiety." (Tr. 26). Plaintiff challenges the findings made by the ALJ at step two.

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 27). Specifically, the ALJ found that Plaintiff did not have any impairment or combination of impairments which met or medically equaled listing 1.02, 1.04, 5.06, 12.04, or 12.06. (Tr. 18–21). Plaintiff does not challenge the ALJ's findings at step three.

At step four, the ALJ made the following RFC determination:

[T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) (lift/carry, push/pull up to 20 pounds occasionally and 10 pounds frequently; sit for about 6 hours, and stand/walk for about 6 hours total in an 8-hour workday) except the claimant is limited to occasional climbing, stooping, and crouching, and to frequent balancing, kneeling, and crawling. She may have occasional exposure to hazards. She is limited to simple, routine tasks.

(Tr. 29). Plaintiff challenges this RFC determination made by the ALJ.

In making this RFC determination, the ALJ, considering the record as a whole, found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," however, the ALJ also noted that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (Tr. 30). Plaintiff does not directly challenge this credibility finding by the ALJ.

The ALJ found that Plaintiff was "unable to perform any past relevant work." (Tr. 34). Plaintiff does not challenge this finding.

Finally, at step five, the ALJ concluded that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers

in the national economy that the claimant can perform." (Tr. 34). Relying upon testimony from IVE Norman, the ALJ specifically found that among the occupations Plaintiff would be able to perform were "lab sample collector" of which there are 24,000 positions in the national economy; "building cleaner" of which there are 145,000 positions in the national economy; and "potato chip sorter" of which there are 18,000 positions in the national economy. (Tr. 35). Other than implicit challenges based on Plaintiff's challenge of the ALJ's findings at steps two and four, Plaintiff does not challenge the ALJ's findings at step five.

Accordingly, the ALJ found that Plaintiff was not under a disability, as that term is defined by the Social Security Act, at any time during the adjudicated period. (Tr. 24, 35).

**IV. Analysis**

Plaintiff asserts one general overarching issue on her appeal of the ALJ's decision: whether there is substantial evidence in the record, as a whole, to support the ALJ's RFC determination. (See, Plf.'s Mem., [Docket No. 16]). In support of her argument, Plaintiff proffers two assertions. First, Plaintiff asserts that the ALJ erred in improperly assessing the weight given to the opinion of Dr. Sherry Vang. (See, Plf.'s Mem., [Docket No. 16], at 3–15). Second, Plaintiff argues that the Appeals Council erred in finding that the newly submitted opinion of Georgi Kroupin, Ph.D, LMFT, did not show a reasonable probability that it would change the outcome of the ALJ's decision. (See, Id. at 15–25).

"A claimant's RFC represents the most [s]he can do despite the combined effects of all of h[er] credible limitations and must be based on all credible evidence." McCoy v. Astrue, 648 F.3d 605, 614 (8th Cir. 2011); accord, 20 C.F.R. § 404.1545(a)(1). "A disability claimant has the burden to establish h[er] RFC." Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). "The ALJ determines a claimant's RFC based on all relevant evidence, including medical records,

observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." Id. at 591. "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of a claimant's ability to function in the workplace. However, there is no requirement that an RFC finding be supported by a specific medical opinion." Hensley v. Colvin, 829 F.3d 926, 932 (8th Cir. 2016). "Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012).

### A. Opinion of Dr. Vang

Plaintiff argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly assessed the weight to be given to the opinion of Dr. Shary Vang. (See, Plf.'s Mem. [Docket No. 16], at 3–15). Specifically, Plaintiff asserts that "[t]he ALJ's RFC is contradicted by . . . [the opinion of Dr. Vang,] and the ALJ did not give legally sufficient good reasons to reject this medical opinion." (Id. at 1). Plaintiff further asserts that "[u]nder these circumstances, remand for further proceedings is the only appropriate remedy." (Id. at 15).

The relevant regulations governing the weighing of opinion evidence were revised for claims filed on or after March 27, 2017. See, 20 C.F.R. § 404.1520c(a). Because Plaintiff filed her application for supplemental security income on June 15, 2017, the new regulations apply here. See, Id.

The new regulations eliminate the long-standing "treating physician" rule. Id.; see also, Kuikka v. Berryhill, 2018 WL 1342482, at *9 n.3 (D. Minn. Oct. 17, 2019) ("On March 27, 2017, the Social Security Administration rescinded the Treating Physician Rule with respect to social security disability appeals filed after the date of publication.") Under the new regulations, an ALJ does "not defer or give any specific evidentiary weight, including controlling weight, to any

medical opinion(s) or prior administrative medical finding(s), including from [the claimant's] medical sources." 20 C.F.R. § 404.1520c.(a) Rather, the ALJ evaluates the persuasiveness of any medical opinion by considering the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c(c).

The two most important factors are supportability and consistency. 20 C.F.R. § 404.1520c.(b)(2). Therefore, the ALJ must explain how these factors were considered. Id. The ALJ may also, but is not required to, explain how the remaining factors were considered. Id. However, where the ALJ "find[s] that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same," the ALJ "will articulate how [she] considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in [claimant's] determination or decision." 20 C.F.R. § 404.1520c.(b)(3).

Here, Dr. Vang rendered an opinion regarding Plaintiff's physical limitations on October 5, 2017, in the form of a check-box Physical Medical Source Statement ("Dr. Vang's Opinion"). (Tr. 368–72). Dr. Vang noted that she had been treating Plaintiff since August 30, 2012, and she listed Plaintiff's conditions. (Tr. 369, 372). Dr. Vang opined that Plaintiff had the ability to lift and carry ten pounds on an occasional basis, that Plaintiff had the ability to stand for two hours and sit for two hours in an eight-hour workday but would have to change positions every fifteen minutes, and that Plaintiff would have to lay down at unpredictable intervals twice per hour. (Tr. 368–69). Dr. Vang further opined that Plaintiff had the ability to frequently twist and rotate or flex her neck, that Plaintiff had the ability to occasionally climb stairs or ladders, and that Plaintiff could never stoop (bend) or crouch. (Tr. 370). In addition, Dr. Vang stated that Plaintiff had "multiple spine

injections but remains in pain," and Dr. Vang opined that Plaintiff would have to avoid moderate exposure to extreme cold to prevent her pain from increasing, as well as, that Plaintiff would be absent from work more than three times per month due to her impairments or treatment. (Tr. 369, 371–72).

The ALJ acknowledged Dr. Vang's opinion, and that she was a treating physician of Plaintiff. (Tr. 33). However, the ALJ "did not find [Dr. Vang's Medical Source Statement] opinion persuasive as it [wa]s extreme and not well-supported." (Tr. 33). The ALJ further found that the "[o]bjective and clinical findings, and the record as a whole are inconsistent with th[e] level of impairment" opined to by Dr. Vang. (Tr. 33).

The ALJ also considered other opinion evidence in the record regarding Plaintiff's physical limitations. The ALJ found that the state agency consultant's initial opinion, which was rendered on September 18, 2017, was not persuasive because the state agency consultant opined that Plaintiff was limited to a medium level of exertion, but evidence submitted after that opinion indicates that Plaintiff is precluded from medium work. (Tr. 32; see also, Tr. 74–75). The ALJ further found that the state agency consultant's opinion at the reconsideration level, which was rendered on November 25, 2017, was "the most consistent with the overall record which does support limiting [Plaintiff] to a light level of exertion" despite not being "well explained or analyzed." (Tr. 33). The ALJ explained that "[t]he records do not support additional limitations with respect to the right lower extremity, as a light level of exertion accommodates for the radiculopathy." (Tr. 33).

Plaintiff first argues that "the ALJ did not consider the medical evidence consistent with the Agency's new opinion evidence rules, and this error is not harmless." (Plf.'s Mem. [Docket No. 16], at 6). Specifically, Plaintiff contends that "the ALJ failed to articulate the more persuasive

factors in the second step as was required where there were multiple opinions which could be reasonably found to be equally persuasive." (Reply [Docket No. 20], at 3; see also, Plf.'s Mem. [Docket No. 16], at 4, 6–15). However, Plaintiff misapplies the relevant regulation.

As noted above, pursuant to the plain language of 20 C.F.R. § 404.1520c, the ALJ was only required to explain how the two most important factors, supportability and consistency, were considered. 20 C.F.R. § 404.1520c.(b)(2). The ALJ was permitted, but not required, to explain how the remaining factors were considered, unless the ALJ were first to find that two or more opinions were both equally supported. 20 C.F.R. § 404.1520c.(b)(2)–(3).

The ALJ did not find that any two opinions were equally supported. (Tr. 32–33). To the contrary, the ALJ clearly found that, despite lacking somewhat in analysis and explanation, the state agency consultant's opinion at the reconsideration level was the most supported, and therefore, the most persuasive opinion. (Tr. 33). Because the ALJ did not find that multiple opinions were equally supported, the ALJ was not required to articulate how the other factors were considered.[3] 20 C.F.R. § 404.1520c(b)(2)–(3). Accordingly, Plaintiff's argument here necessarily fails.

Plaintiff next argues that the ALJ erred in finding that Dr. Vang's opinion was inconsistent with the record as a whole. (Plf.'s Mem. [Docket No. 16], at 8–15). However, as explained below, the ALJ clearly explained her reasons for determining that Dr. Vang's opinion was inconsistent with the record, and the Court finds the ALJ's determination here is supported by substantial evidence.

Referencing specific portions of the record, the ALJ found that Plaintiff "was noncompliant with medications, and did not persist in physical therapy." (Tr. 31–32). These findings are well-

---

[3] To the extent that Plaintiff contends that the ALJ did find that multiple opinions were equally supported, Plaintiff simply misstates the ALJ's clear findings. (See, Tr. 32–33). Hence, Plaintiff's assertion is not supported by the record.

supported in the record. For example, as noted by the ALJ, Plaintiff participated in physical therapy in September 2016, but only continued to do so for two months. (See, Tr. 31; see also, Tr. 420–41). Plaintiff began physical therapy again in December 2017, but Plaintiff admitted that she had not continued with the home health exercises since last attending physical therapy for the same condition. (Tr. 32; see also, Tr. 443, 445, 455). Plaintiff only attended physical therapy at that time for about a month. (See, Tr. 443–447). Subsequently, the ALJ noted that Plaintiff received little treatment for her physical impairments until October 2018, when she reported right knee pain. (Tr. 32). Physical therapy was recommended for Plaintiff's knee. (Tr. 32; see also, Tr. 577). However, the record does not indicate that Plaintiff ever followed that recommendation.

In addition, the ALJ noted that in February 2017, Plaintiff declined an injection for her back. (Tr. 31, see also, Tr. 325). In November 2017, Plaintiff failed to take her prescribed medication. (Tr. 32, see also, Tr. 391). Also in November 2017, a physician noted that noncompliance with medications and treatments was likely contributing to Plaintiff's symptoms. (Tr. 32; see also, 398–99).[4] The record contains other similar evidence. (See, e.g., Tr. 399 (recommending injection); Tr. 440 (Plaintiff has not done any physical therapy exercises in one week); Tr. 486 (not taking medication)).

The ALJ also noted that several records indicate that when followed, Plaintiff's medications and treatment were effective at relieving her symptoms. (Tr. 31–32). These findings are well-documented in the record. (See, e.g., Tr. 308 (going to physical therapy, "feels a little better"); Tr. 347 (pain better after injection); Tr. 431–32 (reports feels better and decreased pain

---

[4] The ALJ also noted that Plaintiff "had a surgical consult and it was determined surgery was not necessary." (Tr. 32). However, the record indicates that despite being referred for a surgical consult, Plaintiff never setup an appointment. (Tr. 391). Regardless, the record supports the ALJ's finding that Plaintiff was not as severely limited physically as opined by Dr. Vang. See, e.g., Bauer v. Soc. Sec. Admin., 734 F. Supp. 2d 773, 806 (D. Minn. 2010) (citing Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 2010)) (noting that "conservative treatment indicates that an impairment is not as severe as alleged").

after physical therapy exercises); Tr. 436 (able to stretch further after physical therapy session); Tr. 459, 464 (feels a little better after doing some exercises at home); Tr. 530 (physical therapy has decreased leg pain)). Indeed, Plaintiff testified at the April 23, 2019, hearing before the ALJ that her prescribed medications help alleviate her pain, and the injections she received provided her with three months of relief from the pain. (Tr. 60). This testimony contradicts Dr. Vang's opinion which indicates Plaintiff had "multiple spine injection but remains in pain." (See, Tr. 369).

A conservative treatment plan is evidence that a claimant's symptoms are not as severe as alleged. See, e.g., Hamman v. Berryhill, 680 F. App'x 493, 495 (8th Cir. 2017); Milam v. Colvin, 794 F.3d 978, 985 (8th Cir. 2015); Bauer v. Soc. Sec. Admin., 734 F. Supp. 2d 773, 806 (D. Minn. 2010); LaCanne v. Massanari, No. 00-2339 ADM/JMM, 2001 WL 1640124, at *2 (D. Minn. July 30, 2001). "A failure to follow a recommended course of treatment also weighs against a claimant's credibility." Wagner v. Astrue, 499 F.3d 842, 851 (8th Cir. 2007) (quoting Guilliams v. Barnhart, 393 F.3d 798, 802 (8th Cir. 2005)). Moreover, "[a]n impairment which can be controlled by treatment or medication is not considered disabling." Estes v. Barnhart, 275 F.3d 722, 725 (8th Cir. 2002); accord, Turpin v. Colvin, 750 F.3d 989, 993 (8th Cir. 2014). Here, Plaintiff's conservative course of treatment and her failure to adhere to recommended medications and treatment supports the ALJ's determination that Plaintiff's symptoms are not as severe as she has alleged.

Likewise, "a claimant's noncompliance can constitute evidence that is inconsistent with a treating physician's medical opinion, and therefore can be considered in determining whether to give that opinion controlling weight." Wildman v. Astrue, 596 F.3d 959, 964 (8th Cir. 2010) (alteration in original); see also, Owen v. Astrue, 551 F.3d 792, 800 (8th Cir. 2008); Kelley v. Barnhart, 372 F.3d 958, 961 (8th Cir. 2004). Here, Plaintiff's conservative course of treatment and

failure to adhere to recommended treatment indicates a level of debilitation less than the high level of functional limitations opined to by Dr. Vang.

The ALJ also found that the objective and clinical findings in the record did not support the level of impairment of Dr. Vang's opinion. (Tr. 33). For example, the ALJ noted that Plaintiff was able to work part time stocking shelves at Walmart, and she lived in an apartment with stairs. (Tr. 32; see also, 445). The ALJ further found that physical exam findings which generally indicated 5/5 strength, at times gait was indicated normal, while at other times gait was indicated antalgic, as well as, the results of Plaintiff's March 2017 MRI, August 2017 EMG, and her October 2018 knee x-ray, did not support greater limitations than those provided in the RFC. (Tr. 31–32; see also, Tr. 382; 395–97 444–45; 548; 576, 615). The state agency consultants independently reached similar conclusions, which further supports the ALJ's finding that Plaintiff was not as limited as opined to by Dr. Vang. (See, Tr. 68–80, 82–96).[5]

In addition, this Court notes that Dr. Vang's opinion was rendered on a check-box form. (See, Tr. 368–72). An ALJ may properly discount the opinion of a treating provider that is conclusory or unsupported and contradicted by other evidence in the record. Rogers v. Chater, 118 F.3d 600, 602 (8th Cir. 1997); Ghant v. Bowen, 930 F.2d 633, 639 (8th Cir. 1991). "Indeed, [a] treating physician's opinion deserves no greater respect than any other physician's opinion when [it] consists of nothing more than vague, conclusory statements." Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010) (alteration in original) (quoting Piepgras v. Chater, 76 F.3d 233, 236 (8th Cir. 1996)).

---

[5] Although, as observed above, the ALJ found that one of the state agency consultant's initial opinions was not persuasive, it still supports the ALJ's conclusion because it opined that Plaintiff was less limited than accounted for in the ALJ's RFC determination. (See, Tr. 32, 68–80).

Dr. Vang's opinion is entirely conclusory. (See, Tr. 368–72). A review of the opinion itself shows that it "consist[s] of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses. [It] cite[s] no medical evidence and provide[s] little to no elaboration, and so [it] possess[es] 'little evidentiary value.'" Thomas v. Berryhill, 881 F.3d 672, 675 (8th Cir. 2018) (quoting Toland v. Colvin, 761 F.3d 931, 937 (8th Cir. 2014)); see also, Wildman, 596 F.3d at 967 (alteration in original) (quoting Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001)) ("The checklist format, generality, and incompleteness of the assessments limit [the assessments'] evidentiary value."). Moreover, Dr. Vang's opinion appears to be based, in part, merely on Plaintiff's subjective reports because when prompted to explain the opined environmental limitations, Dr. Vang merely stated "[Plaintiff] self reports increased . . . back pain in prolonged exposure to cold weather." (Tr. 371) (emphasis added). See, e.g., Brian v. Saul, No. 18-cv-1893 (HB), 2019 WL 4082948, at *9 (D. Minn. Aug. 29, 2019) (citing Kirby, 500 F.3d at 709) ("[I]t is permissible for an ALJ to discredit opinions that are premised on a claimant's own subjective complaints in the absence of objective findings.").

Therefore, this Court finds that the ALJ's finding that Dr. Vang's opinion was inconsistent with the record as a whole is supported by substantial evidence.

Plaintiff's third argument is that it was improper for the ALJ to find the non-examining state agency consultant's opinion at the reconsideration level was more persuasive than Dr. Vang's opinion as a treating provider. (See, e.g., Plf.'s Mem. [Docket No. 16], at 14–15; Reply [Docket No 20], at 3). However, to the extent that Plaintiff's argument relies on the mere fact that Dr. Vang was a treating provider and the state agency consultants were not, Plaintiff's argument necessarily fails. As already noted, the new regulations eliminate the deferential weight that previously applied under the "treating physician" rule. See, 20 C.F.R. § 404.1520c(a).

To the extent that Plaintiff argues it was improper for the ALJ to find the state agency consultant's opinion at the reconsideration level was more persuasive than Dr. Vang's opinion merely because the state agency consultant's opinion "was rendered before significant evidence . . . were [sic] part of the record to review," Plaintiff's argument is also not persuasive. (See,

"[A]n ALJ may embrace a state agency psychological consultant's opinion even if it was made before the record was fully developed." Kuikka v. Berryhill, No. 17-cv-374 (HB), 2018 WL 1342482, at *10 (D. Minn. Mar. 15, 2018). "An ALJ may also assign significant weight to the opinion of a state agency medical consultant who did not have access to all of the records, so long as the ALJ conducts an independent review of the evidence and takes into account portions of the record the consultant had not considered." Id.; accord, Lilja v. Berryhill, No. 16-cv-540 (TNL), 2017 WL 1183977, at *25 (D. Minn. Mar. 29, 2017).

Here, the ALJ did not solely rely on the opinion of the state agency consultant in finding that Plaintiff's limitations were less extreme than opined to by Dr. Vang. The ALJ clearly considered the record as a whole in reaching her conclusion as demonstrated by the ALJ's many specific references to Plaintiff's more recent medical records. (See, Tr. 31–33). Moreover, Plaintiff's argument lacks chronological logic because Dr. Vang's opinion was rendered on October 5, 2017, nearly two months before the state agency consultant's opinion at the reconsideration level which was rendered on November 25, 2017. (See, Tr. Tr. 368–72; 82–96).

The ALJ's finding that the state agency consultant's opinion on reconsideration is the more persuasive opinion is consistent with and supported by the same evidence as that which supported the ALJ's finding that Dr. Vang's opinion was inconsistent with the evidence in the record. Therefore, as explained above, this Court finds that the ALJ's decision to give more weight to the

state agency consultant's opinion than to Dr. Vang's opinion is supported by substantial evidence on the record as a whole.

In sum, Plaintiff is essentially asking this Court to now reweigh the opinion evidence, as well as, the record as a whole, and to come to a different conclusion than the ALJ. This the court cannot do. See, Milam, 794 F.3d at 983; Woolf, 3 F.3d at 1213; see also, Kirby, 500 F.3d at 709 ("It is the function of the ALJ to weigh conflicting evidence and to resolve disagreements among physicians."). To the extent that Plaintiff argues that there was also substantial evidence in the record that might have supported Dr. Vang's opinion and a finding of disability, this Court may not reverse the ALJ simply because substantial evidence exists to support an opposite conclusion. See, Milam, 794 F.3d at 983. Nor can this Court substitute its own judgment or findings of fact for those of the ALJ. See, Woolf, 3 F.3d at 1213. The Court "must consider evidence that both supports and detracts from the ALJ's decision," and it "must affirm the denial of benefits if 'it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings.'" See, Milam, 794 F.3d at 983 (citations omitted) (emphasis added). Such is the present case now before this Court.

For the foregoing reasons, this Court finds Plaintiff's arguments that the ALJ's RFC determination is not supported by substantial evidence because the ALJ improperly assessed the weight given to the opinion of Dr. Shary Vang is unpersuasive in light of the record as a whole.

### B.  Appeals Council

Plaintiff proceeds to further argue that the Appeals Council subsequently erred in finding that the new opinion of Georgi Kroupin, Ph.D., LMFT, submitted after the ALJ issued her decision, did not show a reasonable probability that it would change the outcome of the ALJ's decision.[6]

---

[6] Notably, Plaintiff erroneously states that "[t]he Appeals Council erred by finding that the opinion of Plaintiff's treating psychologist [Dr. Kroupin] was not 'new and material' evidence." (Plf.'s Mem. [Docket No. 16], at 1, 15).

(Plf.'s Mem. [Docket No. 16], at 15–25). Specifically, Plaintiff argues that "Dr. Kroupin's [newly submitted] opinion establishes that Plaintiff's psychosis is a severe impairment, and her combined mental impairments and their associated symptoms are work preclusive and are far more limiting than accounted for in the RFC, which requires remand for consideration." (Id. at 24).

After the ALJ denied Plaintiff's application for benefits, Dr. Kroupin rendered an opinion regarding Plaintiff's mental limitations on June 13, 2019, also in the form of a check-box Mental Medical Source Statement ("Dr. Kroupin's Opinion"). (Tr. 17–20). Dr. Kroupin noted that he had been treating Plaintiff since March 15, 2005, and he stated that Plaintiff had been diagnosed with major depressive disorder recurrent, sever with psychotic features. (Tr. 17). Dr. Kroupin opined by checking boxes that Plaintiff had "extreme" limitations in several areas such as understanding, remembering, and carrying out simple instructions, being aware of hazards, tolerating stress, completing a normal work day and work week without interruptions from mental health symptoms, and maintaining concentration and attention for more than two hours. (Tr. 18). Dr. Kroupin further opined by checking boxes that Plaintiff had "marked" limitations regarding working in proximity to others without being distracted, asking simple questions or requesting assistance, and traveling in unfamiliar places or using public transportation, and he opined that Plaintiff had "moderate" limitations in interacting with the public, getting along with coworkers, and maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. (Tr. 18).

---

The Appeals Council did not find that Dr. Kroupin's Opinion was not "new and material." (See, Tr. 2–7). The Appeals Council found that Dr. Kroupin's Opinion "does not show a reasonable probability that it would change the outcome of the [ALJ's] decision." (Tr. 3). Nevertheless, Plaintiff's argument focuses on "whether the evidence [Dr. Kroupin's Opinion] would have 'a legitimate and effective influence or bearing on the decision of the case.'" (See, Plf.'s Mem. [Docket No.16], at 22–25). And Plaintiff expressly contends that "[t]he Appeals Council's finding that this opinion would not change the outcome of the case is simply contrary to the medical evidence in this matter . . . ." (Id. at 24). As such, the Court construes Plaintiff's arguments as challenging the Appeals Council's actual finding, notwithstanding Plaintiff's apparent misstatement.

In addition, Dr. Kroupin summarily opined that Plaintiff attended "individual and family psychotherapy with minimal to none improvement," Plaintiff is severely depressed with auditory hallucinations and is unable to engage in any work activity,"[7] and Plaintiff "has all days consistently bad, no 'good days.'" (Tr. 17–19). Dr. Kroupin indicated that Plaintiff's limitations, as described in his opinion, were applicable to at least April 29, 2016. (Tr. 20).

Plaintiff newly submitted Dr. Kroupin's opinion as additional evidence in her request for review of the ALJ's decision by the Appeals Council. (Tr. 3, 15). On October 28, 2019, the Appeals Council denied Plaintiff's request for review. (Tr. 2–7). In denying Plaintiff's request for review, the Appeals Council found that Dr. Kroupin's opinion did "not show a reasonable probability that it would change the outcome of the decision," and the Appeals Council "did not exhibit this evidence." (Tr. 3).

Pursuant to 20 C.F.R. § 416.1470(a)(5), "[t]he Appeals Council will review an ALJ's decision when it "receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.'" Craig M. v. Berryhill, No. 18-cv-908 (NEB/DTS), 2019 WL 2648029, at *2 (D. Minn. June 10, 2019), report and recommendation adopted by 2019 WL 2644199 (D. Minn. June 26, 2019) (emphasis added). "However, in reviewing decisions based on an application for benefits, the Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause for not complying with the Five-Day Rule." 20 C.F.R. § 416.1470(b) (emphasis added).

---

[7] The Court notes that although Dr. Kroupin opines that Plaintiff is unable to work, that ultimate decision is reserved for the Commissioner. See, e.g., Vossen v. Astrue, 612 F.3d 1011, 1015 (8th Cir. 2010); Davidson v. Astrue, 578 F.3d 838, 842 (8th Cir. 2009); Daniel v. Saul, No. 17-cv-4322 (ECW), 2019 WL 4306353, at *9 (D. Minn. Sept. 11, 2019). Consequently, this portion of the Dr. Kroupin's opinion "gets no deference because it invades the province of the Commissioner to make the ultimate disability determination." Enquist v. Berryhill, No. 16-cv-3951, 2018 WL 1413460, at *21 (D. Minn. Mar. 21, 2018) (quoting House v. Astrue, 500 F.3d 741, 745 (8th Cir. 2007)).

As already noted, the Appeals Council considered Dr. Kroupin's opinion and found that it did "not show a reasonable probability that it would change the outcome of the decision," and the Appeals Council denied Plaintiff's request for review.[8] (Tr. 2–3). "Where[, as here,] 'the Appeals Council considers the new evidence but declines to review the case, [district courts] review the ALJ's decision and determine whether there is substantial evidence in the administrative record, which now includes the new evidence, to support the ALJ's decision.'" Brazil v. Colvin, No. 15-cv-1631 (HB), 2016 WL 8200434, at *5 (D. Minn. May 9, 2016); accord, Craig, 2019 WL 2648029, at *3 (citing McDade v. Astrue, 720 F.3d 994, 1000 (8th Cir. 2013)); see also, Perks v. Astrue, 687 F.3d 1086, 1093 (8th Cir. 2012) ("Because the Appeals Council denied review, finding that the additional evidence did not "provide a basis for changing the [ALJ's] decision," we do not review the Appeals Council's decision to deny review, rather we determine if the record as a whole, including evidence that is new and material, supports the ALJ's determination.").

Accordingly, the question presently before this Court is whether the ALJ's decision is supported by substantial evidence in the record as a whole, which now includes Dr. Kroupin's opinion. The ALJ found that Plaintiff's acute psychosis was not a severe impairment. (Tr. 26). The ALJ also found that the record "do[es] not support a level of severe depression" and "do[es] not support limitations greater than those provided in the residual functional capacity." (Tr. 33). Plaintiff now contends that those findings are not supported by substantial evidence in the record

---

[8] The Appeals Council did not expressly address the issue of whether Plaintiff showed "good cause" for not complying with the Five-Day Rule. (See, Tr. 2–7). However, a finding of good cause was implicit in the Appeals Council's decision. Plaintiff informed the Appeals Council of why Dr. Kroupin's Opinion was not submitted earlier, and the Appeals Council nonetheless chose to consider the opinion and found that there was not a reasonable probability the opinion would change the ALJ's decision. See, 20 C.F.R. §§ 404.970; 416.1470 ("The Appeals Council will only consider additional evidence under paragraph (a)(5) of this section if you show good cause . . . ."); see also, Thor S. v. Berryhill, No. 18-cv-538-NEB-KMM, 2018 WL 7141873, at *4 (D. Minn. Dec. 13, 2018), report and recommendation adopted by 2019 WL 368459 (D. Minn. Jan. 30, 2019) (noting that to determine additional evidence did not show a reasonable probability that the ALJ's decision would change, "the Appeals Council would, necessarily, have needed to consider the additional evidence").

in light of the subsequent submission of Dr. Kroupin's opinion. (See, Plf.'s Mem. [Docket No. 16], at 22–25). As explained below, this Court disagrees.

The Court first addresses whether the ALJ's finding that Plaintiff's psychosis was not a severe impairment is supported by substantial evidence in the record as a whole, now including Dr. Kroupin's opinion. "A 'severe impairment is defined as one which "significantly limits [the claimant's] physical or mental ability to do basic work activities."'" Martise v. Astrue, 641 F.3d 909, 923 (8th Cir. 2011) (alteration in original) (quoting Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006)). "It is the claimant's burden to establish that h[er] impairment or combination of impairments are severe." Kirby v. Astrue, 500 F.3d 705, 707 (8th Cir. 2007).

In his opinion, Dr. Kroupin referred several times to Plaintiff's psychosis and auditory hallucinations as grounds for his opined limitations. (Tr. 17–19). Dr. Kroupin also expressly indicated that the opined limitations were applicable to at least April 29, 2016. (Tr. 20). However, the record does not indicate that Plaintiff experienced any psychosis or auditory hallucinations prior to November 28, 2018, when she visited an emergency room and first reported those impairments. (See, Tr. 476; see also, Tr. 332 (noting that Plaintiff "denied any psychotic symptoms" including auditory hallucinations)). Indeed, Dr. Kroupin's own treatment notes never reference auditory hallucinations. (See, e.g., Tr. 271, 280, 297, 314, 322, 329, 385, 494, 536). More importantly, Dr. Kroupin own treatment notes consistently indicate that Plaintiff was diagnosed with "[m]ajor depressive disorder, recurrent severe without psychotic features." (Tr. 270, 296, 313, 321, 328, 384, 493, 535) (emphasis added).

Dr. Kroupin further opined that Plaintiff "has all days consistently bad, no 'good days.'" (See, Tr. 19). Nevertheless, at the April 23, 2019, hearing before the ALJ, Plaintiff herself testified that she does not experience auditory hallucinations all the time, and Plaintiff stated that she had

not experienced any auditory hallucinations on the day of the hearing. (Tr. 62). Plaintiff also stated

that the auditory hallucinations typically occurred at night, when she awakens from her sleep. (Tr.

62). Plaintiff's own statements are inconsistent with Dr. Kroupin's opinion.

Therefore, this Court finds that Dr. Kroupin's opinion, which indicates Plaintiff's

psychosis has caused extreme and marked limitations dating back to at least April 29, 2016, is

simply not supported by the record. See, e.g., Davidson v. Astrue, 578 F.3d 838, 843 (8th Cir.

2009) ("It is permissible for an ALJ to discount an opinion of a treating physician that is

inconsistent with the physician's clinical treatment notes."); Travis v. Astrue, 477 F.3d 1037, 1041

(8th Cir. 2007) (quoting Edwards v. Barnhart, 314 F.3d 964, 967 (8th Cir. 2003)) ("If the doctor's

opinion is 'inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it

less weight.'").

The ALJ found that Plaintiff's psychosis was "acute," and therefore, not a severe

impairment. (Tr. 26). "Acute" is defined as "having a short and relatively severe course." Acute,

Dorland's Illustrated Medical Dictionary (32nd Ed. 2012). The record reflects that Plaintiff had

two episodes of psychosis which led to two emergency room visits, on November 28, 2018, and

December 7, 2018, as well as, a voluntary admission into an inpatient facility following the second

emergency room visit. (See, e.g., Tr. 476, 583, 621). However, Plaintiff had no episodes of

psychosis and had not reported hearing voices prior to that time, and nothing in the record indicated

that the psychosis would continue for a prolonged period. Accordingly, there is substantial

evidence in the record as a whole which supports the ALJ's finding that Plaintiff's psychosis was

"acute."

Plaintiff does not directly challenge the ALJ's finding based on any of the evidence

considered by the ALJ. Rather, she contends that "Dr. Kroupin's opinion establishes that Plaintiff's

psychosis is a severe impairment." (Plf.'s Mem. [Docket No. 16], at 24). A severe impairment requires sustained and prolonged impairment for 12 months or more. See, Amy L. v. Saul, No. 18-cv-2173 (HB), 2019 WL 4600262, at *6 (D. Minn. Sept. 19, 2019); Craig M., 2019 WL 2648029, at *8–9. Moreover, as already noted, Dr. Kroupin's opinion is not supported by his own treatment notes, nor is it supported by the record as a whole. See, e.g., Davidson, 578 F.3d at 843; Travis, 477 F.3d at 1041. As such, this Court finds that the ALJ's determination that Plaintiff's psychosis was only "acute," and thus not a "severe impairment" is supported by substantial evidence in the record as a whole, even when Dr. Kroupin's opinion is included in the record.

The Court next addresses whether the ALJ's RFC determination is supported by substantial evidence in the record as a whole, including Dr. Kroupin's opinion. As already noted, Dr. Kroupin opined that Plaintiff has several extreme and marked mental limitations, Plaintiff attended "individual and family psychotherapy with minimal to none improvement," and Plaintiff "has all days consistently bad, no 'good days.'" (Tr. 17–20). However, as already observed above, there is a substantial amount of evidence in the record that contradicts Dr. Kroupin's opinion and supports the ALJ's RFC determination.

Further examples of contradictions in the medical record as a whole and Dr. Kroupin's opinion exist. Dr. Kroupin opined that Plaintiff had extreme limitations maintaining concentration and attention for more than two hours, and understanding, remembering, and carrying out simple instructions. (Tr. 18). However, several of Plaintiff's other medical records indicate that Plaintiff's attention and concentration were regularly good and her memory was intact. (See, e.g., Tr. 334, 343, 529–30, 548, 592, 614–15, 662). Dr. Kroupin also opined that Plaintiff has marked limitations traveling in unfamiliar places or using public transportation, but the record reflects that she is able to use the light rail for transportation. (Tr. 391). And Dr. Kroupin opined that Plaintiff would have

"moderate" limitations adhering to basic standards of neatness and cleanliness, but the there is nothing anywhere else in record to indicate or support that Plaintiff has had any limitations in these areas. (See, e.g., Tr. 334, 343, 529, 548 (describing Plaintiff as "[c]asually groomed and traditionally dressed")).

In addition, the record contains evidence that contradicts Dr. Kroupin's opinion that Plaintiff attended "individual and family psychotherapy with minimal to none improvement," as well as, Dr. Kroupin's opinion that Plaintiff "has all days consistently bad, no 'good days.'" (See, e.g., Tr. 385 (Dr. Kroupin himself reported that "[a]s a result of processing [Plaintiff] was feeling significantly less depressed . . . ."); Tr. 388 (noting Plaintiff was able to feel significantly better during therapy); Tr. 533 (anxiety and depression have improved); Tr. 547 (Plaintiff "denies feeling depressed or frustrated at this time").

Moreover, the Court finds that the record indicates that Plaintiff has received sporadic, conservative mental health treatment, and Plaintiff has felt better when taking medications as directed, but she has regularly failed to take them. (See, e.g., Tr. 342–43 (Cymbalta is helpful for Plaintiff's depression and anxiety); Tr. 385 (noting Plaintiff had not attended therapy in seven months); Tr. 391 (not taking her Cymbalta); Tr. 477 (has not taken medications for one month); Tr. 529–30 (finding Plaintiff is less depressed and less anxious with medications); Tr. 547 (Plaintiff has not been taking Cymbalta for some time, but when she was taking Cymbalta is worked fairly well); Tr. 548 (Plaintiff thought Cymbalta was helpful); Tr. 583 (Plaintiff "denies being on any medications at this time")). Notably, Plaintiff indicated that she had not been taking her prescribed medications prior to the episode of psychosis which led to two emergency room visits. (Tr. 477; 583). Plaintiff's conservative treatment plan and failure to adhere to her medications indicates that Plaintiff's mental impairments are not as limiting as alleged or as opined

by Dr. Kroupin. <u>See, e.g.</u>, <u>Hamman</u>, 680 F. App'x at 495; <u>Milam</u>, 794 F.3d at 985; <u>Turpin</u>, 750 F.3d 993; <u>Wagner</u>, 499 F.3d at 851; <u>Kelley</u>, 372 F.3d at 961; <u>Estes</u>, 275 F.3d at 725; <u>Bauer</u>, 734 F. Supp. 2d at 806; <u>LaCanne</u>, 2001 WL 1640124, at *2.

Lastly, the Court notes that the conclusory check-box format of Dr. Kroupin's opinion limits its evidentiary value. <u>See</u>, <u>Wildman</u>, 596 F.3d at 967 (alteration in original) (quoting <u>Holmstrom</u>, 270 F.3d at 721) ("The checklist format, generality, and incompleteness of the assessments limit [the assessments'] evidentiary value."); <u>see</u> <u>also</u>, <u>Thomas</u>, 881 F.3d at 675 (quoting <u>Toland</u>, 761 F.3d at 937 ("Those assessments, however, consist of nothing more than vague, conclusory statements—checked boxes, circled answers, and brief fill-in-the-blank responses. They cite no medical evidence and provide little to no elaboration, and so they possess "little evidentiary value.").

The ALJ considered the record as a whole in making her RFC determination, and the ALJ determined Plaintiff is not nearly as limited as subsequently opined by Dr. Kroupin. (<u>See</u>, Tr. 27–29, 33). The ALJ referenced several records that support her findings. (<u>See</u>, Tr. 27–29, 33). Where the ALJ concluded Plaintiff has functional limitations due to her mental impairments, the ALJ incorporated those limitations into her RFC determination. For example, where the ALJ found that Plaintiff has a moderate limitation concentrating, persisting, or maintaining pace, the ALJ explained her finding and accounted for it in her RFC determination by limiting Plaintiff to simple, routine tasks. (<u>See</u>, Tr. 28–29). While the ALJ's RFC determination primarily accounted for Plaintiff's physical limitations, the record reflects in fact that Plaintiff's physical impairments have been purportedly far more limiting than her mental impairments. Indeed, even Plaintiffs mental health records frequently reference her physical impairments. (<u>See, e.g.</u>, Tr. 280, 297, 314, 322;

329; 331, 343, 385, 494). Accordingly, this Court finds that there is substantial evidence in the record as a whole which supports the ALJ's RFC determination.

For the foregoing reasons, this Court finds Plaintiff's argument that that the Appeals Council erred in finding that the late submission on the opinion of Georgi Kroupin, Ph.D., LMFT, did not show a reasonable probability that it would change the outcome of the ALJ's decision is unpersuasive in light of the record as a whole even including Dr, Kroupin's opinion.

## V. Conclusion

The Court's review of the record as a whole indicates that the ALJ's decision that Plaintiff was not disabled as defined by the Social Security Administration Act was supported by substantial evidence.

Therefore, based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT**:

1.    Plaintiff's Motion for Summary Judgment, [Docket No. 15], be **DENIED**; and

2.    Defendant's Motion for Summary Judgment, [Docket No. 18], be **GRANTED**.

Dated: January 26, 2021                                    s/Leo I. Brisbois
                                                           Hon. Leo I. Brisbois
                                                           United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).